Judge John Padova of our United States District Court for the Eastern District of Pennsylvania for sitting with us for these arguments and for our submitted cases. I say we're we're down two judges and we can use all the help we can get but with Judge Padova it's exceptional help so thank you John very much. I concur in that opinion. Thank you. All right we will proceed with our first case of the day United States v. George Lychock. Neither the reasons provided by the District Court at sentencing nor any other set of reasons on this set of facts would be sufficiently compelling to justify the sentence provided by the District Court. This case is not gall. This is not a case in which there was the extraordinary showing of contrition, lack of dangerousness, rehabilitation, or respect for the law manifest by Mr. Gall when he after committing the offense conduct for only about two months withdrew from the criminal conduct and led a law-abiding life for two years. I would assume you would say that it is not gall but it is goth. But I would say that it is goth. It's very much like goth in this case. It almost identical guidelines ranges and offense conduct. Mr. goth had viewed 300 more images so his guidelines range was six to ten months higher but he was sentenced to four months. In all other respects they had a similar criminal background a history category of one. Mr. Lychock actually had a slight more criminal background having used marijuana. Mr. goth was a much more sympathetic figure in some sense because of his extraordinary commitment to his community to his involvement in the school and and the support that was shown for him at sentencing. Nevertheless as the court found in that case the guidelines range and the finding of the court was essentially a policy disagreement with the guidelines. Counselor are you satisfied with the trial judges performance procedurally? Well in some sense the court the court made some errors. She did not discuss the disparity for instance that was that arose with respect to other defendants and she we really believe that she did not give meaningful consideration to for instance the seriousness of the offense. What result her sentence would have on other defendants respect for the law but the the mostly what we press is that these kind of it is sometimes difficult to tease out the difference between what's a procedural and what's a substantive error but what is apparent at the end of the sentence is that this was let all of this led to us a substantively unreasonable sentence a sentence that promoted disparity and disrespect for the sentences of Congress in this area. Pretty pretty clearly the judge here has a policy disagreement with the sentencing guidelines in in this type of offense you know if we look at Spears albeit that's a crack cocaine case not a child porn case but the Supreme Court says that district courts are entitled to reject and very categorically from the crack cocaine guidelines based on a policy disagreement with those guidelines. What about a policy disagreement with the child porn guidelines? Should we extend the same license? The short answer is no I mean both because these guidelines couldn't be more different than the crack cocaine guidelines. These guidelines these got with respect to child pornography guidelines they're not based on the usual empirical review that the Sentencing Commission usually does. These I mean the the guidelines with respect to child pornography as I understand it at least one of our core appellate courts has said really resulted from a continuing attention from Congress and continuing amendments and that's how the range was built and my understanding of the law is that I mean if it's if it's not the Sentencing Commission acting empirically then there's more latitude that's given to the trial judge. Actually your honor the the Sentencing Commission did pursue its ordinary approach to identifying a guidelines range when it created these guidelines and as it proceeded to amend them under the Directors of Congress. The role of the Commission pursuant to its statutory mandate 994 is to both review past sentencing practices and consider them but 994 also specifically says they're not supposed to implement those practices as guidelines. They're supposed to take those under consideration in many cases the statute specifically says they're not severe enough. They are required to also consider many other commentary from practitioners in the field and also to conform to the Directives of Congress and so in conforming as the Commission did with Directives of Congress and also in developing their own rationale over time they acted pursuant to their statutory mandate and that does not make their guidelines any less compelling or empirical studies of past data and I think that you know there's an there's an effort being made to say that what Kimbrough was about was only about affirming guidelines if the Sentencing Commission has looked at past sentencing practices and that is not what Kimbrough says. Kimbrough simply says in the case of crack cocaine the Commission said it only looked at a statutory maximum and minimum of Congress before the sentencing guidelines had ever been and then it subsequently repudiated this as an appropriate method for setting a set of guidelines. Well now these guidelines were amended and increased after 2003 so I mean if he were being sentenced under the later guidelines he would have gotten 41 I mean it would have been 41 to 51 range how did that amendment happen wasn't that mainly Congress rather than the Congress Congress put into practice Congress passed the Protect Act in 2003 and that set a statutory mandatory minimum for receipt as a result of that the Commission amended the guidelines in several ways taking into account the fact that there was a new statutory mandatory minimum and raised offense levels correspondingly for it for the related offenses so that punishment would continue to be proportional so they were acting in their statutorily mandated role they were both taking into account congressional directives and conforming the guidelines to congressional directive but using their professional insight to create a set of guidelines that are proportional and so in that way they aren't they aren't simply a body that's being reactive to congressional directives. Well is there any move afoot I mean there was move afoot to change the crack cocaine guidelines I mean and judges would talk constantly about how unfair it was is there any move afoot to alter these the current guidelines based upon a policy such as the one Judge Thompson believes is appropriate ie these people need treatment jail probably isn't the right place for them etc etc. I want to talk about three views of the guidelines because I think there's a set of there are a set of district court judges who are unhappy with these guidelines and they and they cite in their unhappiness an article by the federal defender which traces a history of the passage of these guidelines and the rationale behind these guidelines and that article I afraid I'm afraid I spent my summer vacation researching every citation to the legislative record in that article and also the entire legislative history of child pornography which starts 15 years before that article begins and so I think this set of decisions as we'll be arguing in an appeal later to this these decisions aren't based in actual accurate they do not reflect an accurate picture of the legislative history of this guideline or the reasons courts might be dissatisfied with it if you look at the congressional record from 2003 when Congress took up child pornography and the context of other departures one thing that was set on the record by both Senators Leahy and Senator Kennedy is that this guideline happens and these set of punishments happen to be appropriate and while they they appreciate the judges might want to have discretion in many areas this is one set of guidelines where they really do not do not like the fact that judges are departing downwards and there's no movement of foot for instance as that congressional record would indicate to reduce these guidelines this also happens to be a set of guidelines that the Supreme Court has well I mean rational looking at that the Congress seemed quite firm on the crack cocaine guidelines for a long time that they shouldn't be reversed so we should not be held captive by what Congress thinks should we Congress wasn't as definitive at all with respect to crack cocaine they didn't say that the Commission this is what we want you to do and that was one of the problems that the Supreme Court had in Kimbrough with the government's position they said well Congress never actually told the Commission do this they said okay we don't want it to be one-to-one but come back to us with another option and so you know the Commission worked on other options but the Commission ultimately said Congress you have to take this up again we cannot in in the absence of your actions pass new guidelines and or new penalties very accurately and so the Supreme Court noted that there really was a vacuum of opinion here which is quite different than saying that when it comes to Congress very clearly expressing its views as it has repeatedly repeatedly be visiting this that court should not give this close consideration serious consideration and I think this is particularly important in child pornography because the legislative history is vast reflecting the fact that Congress has studied this again and again I mean they really have reviewed about 2,000 psychological studies counsel let me follow up on judge Rose question with with another one are you arguing that it's unreasonable for the trial judge in this case case involving child pornography to implement a philosophical difference whereas it is not unreasonable in the crack cocaine case there there are two ways there are two answers to that one is there there is no law the Supreme Court has not found that a court can undertake a philosophical disagreement separate from individualized fact findings in any area except for crack cocaine and this circuit has found that the findings need to be individualized and that has not been changed by the Supreme Court so to the extent the court had undertaken an individualized finding then that is possible and then to the extent the court does undertake such a philosophical disagreement that is subject to close review and it is a for a sentence which is subject to less respect and it's worth thinking about for a minute what a court needs to do to engage in a policy analysis it's not sufficient I think on this record to say I disagree with these guidelines full stop that's not a sufficient analysis in light of 30 years of congressional analysis to brush aside the findings of Congress if a court would like to engage in a flat philosophical disagreement with Congress then they should identify aspects of congressional policy which they disagree with and have support for their reasons which are substantial and and again the court is not the elected body making policy in this country the Congress is the elected body charged with identifying penalties and setting punishments for them and identifying criminal offenses so there is a reason for a court to exercise some degree of to Congress it doesn't need to say Congress did it so I'm not going to touch it but the deference needs to be shown in an acknowledgment and a weighing out of the full reasons for Congress's policy judgments and there was nothing like that attempted here this is this is the most passing reference to a disagreement that was made and so for that reason it can't support the judge's sentence here it's a very weak reason to support the sentence. Okay on rebuttal could you give us the citation to the Defender article I don't know that it's cited in your brief. It's not cited. Thank you. Mr. Brickfield. Good morning Your Honor. My name is Paul Brickfield. I represent George Light Chalk in this case. Your Honor, I submit that the Gall case is controlling and that the Gall case sent a very clear message to the courts that the district courts in their experience and wisdom and their day-to-day practice in the trenches of the courts are to be given the discretion to do an individualized determination of a prosecutorial sentence. Did we not send a message in Goff? How is Goff that different? Goff is very different in several key ways. Some of them touched upon by the prosecutor. First of all, Goff had a higher guideline level. He was 37 to 43. Mr. Light Chalk was 30 to 37. Mr. Goff was a school teacher, a wonderful guy who did good for the community. Yes, that's correct. But Your Honor, I would submit that most people would suggest that a school teacher in an elementary school involved with child pornography is someone that needs more punishment. I was on the Goff panel and there was no indication that Goff in any way had abused or acted inappropriately with any school child that he ever ran into. That's correct. But I think the court was very concerned about the fantasy world that Mr. Goff was living in because the pictures in his case were actual depictions of rape and molestation of minors by adults. The pictures involving Mr. Light Chalk were single or multiple minors not engaged in actual sexual acts. They were sexually explicit poses only. But we're not, I mean Congress hasn't drawn that a line and we're not going to start drawing lines based upon exact depictions. All of this is proscribed. That's correct. But in my mind, the key difference between George Light Chalk and Mr. Goff is as follows. Mr. Goff did not demonstrate acceptance or responsibility. Throughout the sentencing of the district court, he maintained that essentially this was a victimless crime. It was harmless. And I think a court could send a clear message that Mr. Goff did not accept or recognize that his conduct was exceptionally harmful. He went on and on at the sentencing of Mr. Goff and his attorney that this was done in a room by himself, that there was no harm to any children and so on and so forth. When a client or defendant sends a message like that, and many times you do respond with a jail sentence because the person hasn't accepted the lawfulness of his conduct. Mr. Light Chalk, in contrast, fully accepted his conduct. The moment that the police arrived at his home without a search warrant, he consented to a search of his home. He gave a statement of admission at that time. He went into counsel. He didn't admit what was really on his computer until they started looking at the hard drive. No, he admitted that there were pictures of children. Mine was on the computer. He was wrong as to the number. Yeah, I mean by several hundred. Well, there were only 300 altogether, but I'm sorry, Judge. Isn't there a real difference here in that Goff went to jail for four months and here the court determined absolutely no jail sentence. Isn't that a striking factor here where the sentencing commission says jail is appropriate and indeed 30 to 37 months and when he is given probation? How can you argue that that is reasonable? Actually, you're only talking here about a four month distinction. Two days in jail versus no jail, I suggest to you. Let me say this about Judge Thompson. First of all, she's a very experienced judge. We do not doubt that. She is a former head prosecutor. We have great admiration for Judge Thompson and she is a good friend. Right. But that's not what drives our decision here today. No, I understand that, but my point is this. She has one of the toughest sentences in the district and having appeared before her many times, defendants usually leave very disappointed when they go to Judge Thompson. That really isn't relevant here. We have to focus on what happened here. No, I am. But the point is this. Judge Thompson, in this case, in Lightshock's case, she followed the proper procedural rules and she conducted the proper analysis. With respect to the procedural rules, will you point to me what part of the judge's reasoning with respect to this sentence constituted meaningful consideration of what would at least at first blush appear to be an unwarranted sentencing disparity given the other rate tag? Well, other cases have held that a judge does not have to explicitly mention all the factors. In addition, in Gall, at page 595, the court said that if the court, the district court has considered the proper guideline range, that that can be considered to be considering the need to avoid unwarranted disparities. At the very beginning of her sentencing, in this case, Judge Thompson recognized that the sentencing guidelines were 30 to 37 months. I think what motivated Judge Thompson here was Mr. Lightshock, from the moment the police arrived at his house, he demonstrated the understanding of the wrongfulness of his conduct and the need to change. And that's why he consented to the search. That's why he went into counseling even before he got an attorney. And that's why at the sentencing, I think she was moved by his explicit acknowledgment that he had harmed children. He did not walk away a minute from his recognition. He said he would live every day of the rest of his life knowing that he had harmed children. And I think she was moved by that, and I think she, balancing all the factors, determined that a sentence of probation was appropriate for Mr. Lightshock. She said, what should I do with this individual? She recognized the guidelines of 30 to 37 months, but she concluded that Lightshock and society would be better served by counseling and close supervision. Well, she really, I mean, there was an agreement among counsel that 30 months was reasonable. That's correct. And she decided that jail was not reasonable. That's correct. So it seems to me that her decision wasn't based upon his acceptance of responsibility. It was based upon whether he should go to jail. And she notes he sought psychological help. He's been in therapy. His psychologist has written a report saying he's benefiting. He's going along in a constructive way. And so we won't give jail to someone like that, which seems to be totally antithetical to what the guidelines are saying with respect to jail. I cannot see the benefit of imposing a jail term. Yes. And yet Congress says that's what you're supposed to do. Well, but. Because, I mean, I was on the district court, and there are a lot of times I didn't think a jail term was going to be beneficial. Believe me. Well, Your Honor, I think you have to look at Judge Thompson's decisions for the Gall case. Because the Gall case, basically the Supreme Court has said loud and clear by a 7-2 vote that a sentence of probation may be appropriate, that the judges are giving, quite frankly, I think the handwriting is on the wall between Booker, Spears, Kimbrough, Gall, and the like, that the courts are returning discretion back to the sentencing court. You could easily stand here and say, how could Gall get probation? As a college student, he was involved with a large drug ring. He made $30,000 personally. But he was in it, I think, eight months, and he pulled back, and the event was eight years before. I mean, the facts were very different. But think about a college student, how many drugs do you have to sell to make $30,000 yourself? And the court there said, yes, self-rehabilitation. That was the key in that case. The court's perception that it would be wrong and unfair to send this man to jail. How is he that different from George Leitchock? George Leitchock, he was the police candidate in his house. He let them in, and he immediately started on the right path. I think that's what Judge Thompson recognized. I think the Gall case is controlling here. The courts are very clear that they are going to return to the district court judge the discretion to look at each case, each person as an individual, and make the appropriate determination. Except that, and picking up on Judge Cordova's point, you know, when the disparity just jumps out at you, it seems you have to address that and talk about why this isn't problematic and why this does not promote disrespect for the law, especially in this situation. You had 50 defendants who were pulled up in this whole scam, and most of them got, I think, 30 months, 28, 30 months is the average. Doesn't a judge have to address that? No. Honestly, I think Judge Thompson, as Your Honors were asking the prosecutor, these child pornography guidelines have not been driven by empirical studies. This is the direct result of the Congress systematically raising the guideline range without any studies or support, systematically removing normal downward departures, saying explicitly these are not available for child pornography. It's a reaction to the public concern about child pornography. When a district court engages in policy analysis or disagrees with the policy behind the sentencing guidelines, Ms. Sedlowski gave us fair ideas of the parameters that we should consider. What is your position to support a district judge's policy disagreement? What should the district judge set out in the sentencing discussion? Well, Judge Thompson was pretty explicit when she said she essentially doesn't believe that jail is appropriate for what she calls a computer. You just have to say that? I disagree. You have to have facts to support it. She had a very good record about Mr. Leitchoff. You were saying it's simply facts about the individual defendant that should support the policy disagreement? No. Judge Thompson is perhaps ahead of the curve. Okay, so what must she present to have us to recognize her policy disagreement? I think I agree with the prosecutor that so far, based on spheres, only the correct cocaine guidelines has been approved to have a philosophical difference from the guidelines. Judge Thompson did not present a decision that way. She presented almost an anticipating rule that the individualized fact is balancing. So my position is that, based on Gould, her decision is entitled to deferential abuse of discretion standards, very limited review, and that she placed adequate facts in the record to support the decision in this case. Gould, by example, had the very same guidelines, 30 to 37 months, and the Supreme Court, by a 7-2 vote, found no problem with that, relying on that gentleman getting that kind of downward departure. But there's a procedural component, too, which is important, as is the substantive component, and that is procedurally, especially under these circumstances where there's apparent disparity, doesn't the trial judge have to specifically address that apparent disparity in order to satisfy the procedural responsibilities? No. I disagree, because the Supreme Court in Gould said you do not have to explicitly address each item, and if you recognize the guidelines, that recognizes the need for unwanted disparity. Now, in the Booker case, it's not the same. Well, I mean, isn't the law settled that if there's an argument that's made, a reasonable argument that's made, that relates to one of the statutory factors, the trial judge has to address it at sentencing? And the government, in this case, did, in its brief, certainly, make the disparity argument arising out of retake. That's correct, Your Honor. But the government submitted their standard memo in this case, the sentencing memo. They added a few minor details about Mr. Leitchoff. If you read the actual sentencing statement by the prosecutor at the sentencing, they raised no factors. They did not consider the—they just told the court in one paragraph, look at the factors, and we think 30 months. They did not direct the court to any particular things, and I think the Booker decision recognized that the goal of uniformity was going to be going by the wayside in the individual cases. I think it's important that the government itself, in their brief, indicates that they recognize that this case might support a downward departure itself. On page 14 of their brief, they said that the facts of this case might support a departure. So the government is not even—in their brief, they recognize that Mr. Leitchoff is perhaps out of that normal range. They're really just saying they don't think it should go down as far as Judge Thompson said, and I think then you're getting into the weighing, which goes away from the abuse of discretion standard. Judge Thompson, I believe, made an adequate record. In the end of the day, the Goff case, he ended up with four months' incarceration and one year's house arrest, and the United States did not appeal that. So I think the comparison should be between the four months versus the probation, and I think the Gold case made very clear something that everyone in this field often overlooks, which is the substantial restrictions of liberty that probation provides in every case. It's particularly clear in child pornography cases where a defendant is subject to some unique provisions. For example, you must submit to polygraph testing. You must have counseling on an ongoing basis. You have searches of your home. You have computer restrictions on the use of your computer. There's monitoring equipment placed on your computer. You have to report on a frequent basis. You cannot move or leave the state without permission. There are many, many restrictions. There are restrictions on contact even with children, both in employment and volunteer provision, which was imposed on Mr. Leitchoff. So he received the maximum period of probation with very significant restrictions of liberty, and I ask the court to defer to Judge Thompson and her balance in this case. Thank you. Thank you, Counsel. As the Supreme Court made clear in Gall, when the court undertakes a major departure, it should be supported by a significant justification. Here, the justification offered cannot possibly rise to that standard. While probation may be the appropriate sentence in certain cases, such as Mr. Goff's, where he already had a two-year track record of voluntarily complying with the law, Mr. Leitchoff had no such track record. He had to be caught in the act. It's a very common thing for defendants to go into counseling after being caught, as Judge Thompson even noted on the record. It doesn't qualify him to be an exceptional or, in any case, to have taken responsibility in any unique way that takes him outside of the heartland of defenders. This person was someone who fell within the heartland of defenders. This case is important because it's obvious from this case how easy it is to dismiss the guidelines with a few quick words. It brings to mind the instruction of the Supreme Court in Kimbrough that there are certain institutional competencies, that courts have a competency to review the individual in front of them and are most compelling as they observe the characteristics of that individual, but that Congress and the Commission have a greater institutional competency to evaluate policy. When a court dismisses the policy of Congress and the Commission in a line and when it becomes truth because people have said it over and over again that these guidelines lack an empirical analysis, when, in fact, a review of these guidelines demonstrates that they lack no such analysis, it's important to hold judges responsible for actually reviewing, going back to the legislative history at the very least, and reviewing the foundation. Well, there wasn't any mandatory minimum, Counsel. I mean, if Congress wanted jail time as a matter of policy, ostensibly that could have come through a mandatory minimum, and there wasn't any here. Absolutely, but courts and the Commission have resisted that, and there's reasons to resist a mandatory minimum, but at the same time to express, as they had for many years through the guidelines, their feelings about the relative harm of this offense. And one way they did that was to suggest to the Commission that they have certain enhancements in the guidelines. They would direct enhancements for the number of images, for instance, in 2003. And so that differentiated, that got you over probation here. They talked about enhancements for use of a computer and why that was a very important distinction between people who were just using the mails and people using the computer, making it much harder to track them down. They talked about differentiating between people who have images of violence and people who don't have images of violence. And Mr. Leitchok did have images of people engaged in sexual acts and not just people engaged in posing. I specifically spoke to the agent yesterday and asked her to review the collection to confirm that the statement in the PSR was correct. And it is correct that he had children engaged in sexual acts and not just posing. And, you know, they give credit for responsibility and criminal history, but Congress expressed a sort of sense of the spectrum of this crime. And Mr. Leitchok by no means fell at the bottom of the range, which was probation. And their rationale for finding that real children are harmed, that more images come on the market the more that people look at them, that children who are in these pictures feel that their images and this crime never goes away because it's always out there being recirculated by offenders is exactly what Congress was trying to address and trying to address it proportionally according to defendants who had more images or worse images. Your Honor, has the site to the Defender article, if you have it? It's called, and this is by no means an endorsement of the Defender article, deconstructing the myth of careful study, a primer on the flawed progression of the child pornography guidelines, and it's unpublished. You can only find it at the Federal Defender's website. And so I asked the Court's permission. I'm happy to submit, and I'd like to submit my brief responding to this. I wrote a 78-page brief, I'm afraid, and submitted it to the District Court, which addresses the legislative history that Mr. Stabenow – Well, maybe given that, and maybe it's not published, and maybe because it's not part of the record, should we pass on it, or would you like to see it? There will be another chance if the government takes appeal from the decision that actually rests on it. I think it's not – Because it was not part of the record. It wasn't under consideration here. I just raise it to discuss the fact that, you know, it's easily said that these lack an empirical basis. It's becoming true, and the government resists them. I think we will then not seize the opportunity to read it and or your response, but thank you. It would probably just involve more response by counsel, and it's not part of the record. It would be linked, please. Fine. Next case. Thank you, counsel. The case was well argued. We'll take it under advisement. We'll call our next case.